UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEILA LYNNE ROBERTS,

                  Plaintiff,           Civil Action No. 17-12458
                                   Honorable Mark A. Goldsmith
                                   Magistrate Judge David R. Grand

v.

SOCIAL SECURITY
COMMISSIONER,

                  Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [18, 20]

Plaintiff Sheila Lynne Roberts ("Roberts") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [18, 20], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Roberts is not disabled under the Act. Accordingly, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [20] be GRANTED, that Roberts' Motion for Summary Judgment [18] be DENIED, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II.    REPORT

### A.    Procedural History

On April 4, 2014, Roberts filed applications for DIB and SSI, alleging a disability onset date of June 1, 2013.  (Tr. 73-74, 86-87, 100-01, 184, 191, 215-16, 256).  These applications were denied at the initial level.  (Tr. 100-01).  Roberts filed a timely request for an administrative hearing, which was held on March 10, 2016, before ALJ JoErin O'Leary.  (Tr. 29-72).  Roberts, who was represented by attorney John I. Tsiros, testified at the hearing, as did vocational expert ("VE") Michelle A. Ross.  (*Id.*).  On May 3, 2016, the ALJ issued a written decision finding that Roberts is not disabled under the Act.  (Tr. 9-28).  On May 30, 2017, the Appeals Council denied review.  (Tr. 1-6).  Roberts timely filed for judicial review of the final decision on July 28, 2017.  (Doc. #1).  The parties filed cross-motions for summary judgment (Docs. #18, #20), and Roberts filed a reply.  (Doc. #21).

### B.    Framework for Disability Determinations

Under the Act, DIB and SSI benefits are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

>Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
>Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C.   Background

#### 1.   *The Record*

Roberts alleges disability as a result of lower and upper back problems, chronic pancreatitis, insomnia, depression, stomach problems, and scoliosis.  (Tr. 73, 86, 220).  At the time of the administrative hearing, Roberts was fifty years old.  (Tr. 36).

The Court has thoroughly reviewed the record in this matter, including Function Reports by Roberts and her friend, Tamara Berry Koons ("Koons"), along with Roberts' medical record, Disability Reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.   *Vocational Expert's Testimony*

Michelle A. Ross testified as an independent VE at the administrative hearing.  (Tr. 279, 281).  The ALJ found that Roberts had one job that qualifies as substantial gainful activity:  a pontoon-manufacturing job.  (Tr. 66).  When the ALJ asked the VE to identify that job, the VE responded that it would best be classified as a boat rigger (Dictionary of Occupational Titles ("DOT")) number 806.464-010; medium per the DOT; Specific Vocational Preparation ("SVP") of 4.  (Tr. 66-67).

The ALJ asked the VE to imagine a hypothetical individual of Roberts' age, education, and work experience who would be limited to light work, with the following additional limitations:  never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally balancing, stooping, kneeling, crouching, or crawling; never working around unprotected heights or dangerous, moving mechanical parts; and never working around occupational vibration.  (Tr. 67).  The individual would also be limited to no more than occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, or extreme heat; limited to simple, routine, and repetitive tasks not performed at a production rate pace and simple work-related decisions; and limited to not working with the general public but occasionally interacting with supervisors and coworkers.  (*Id.*).  The VE testified that the hypothetical individual could not perform any past work, but the individual could perform other unskilled, light jobs with an SVP of 2 that exist in the national economy, such as:  machine tender (DOT number 569.686-046; 101,000 jobs); line attendant (DOT number 524.687-022; 125,000 jobs); and packager (DOT number 559.687-074; 122,000 jobs).  (Tr. 67-68).

The ALJ then asked the VE to imagine a hypothetical individual of Roberts' age (before she turned fifty years old), education, and work experience who had all of the same non-exertional restrictions as in the previous hypothetical but who would be limited to sedentary

4

work.  (Tr. 68).  The VE testified that this person could also perform no past work, but the individual could perform unskilled sedentary positions with an SVP of 2 that exist in the national economy, for example:  bench assembler (DOT 739.687-182; 130,000 jobs); inserter (DOT 713.687-026; 125,000 jobs); and machine attendant (DOT 689.585-018; 110,000 jobs).  (*Id.*).

Next, the ALJ asked the VE to imagine a hypothetical individual with the same limitations as in the first hypothetical with one difference:  due to a number of different impairments, the individual would be unpredictably absent and unable to attend work more than three times per month.  (Tr. 68-69).  The VE testified that with that additional restriction there would be no work that such an individual could perform.  (Tr. 69).

The VE testified that her testimony was consistent with the DOT except for the portion on absenteeism, which was based on her professional experience.  (Tr. 68-69).  The VE also testified that all of the jobs she listed would require an individual to remain on task for at least 85% to 90% of the workday and that none of these jobs would allow an individual to spend two to three hours in a recliner.[1]  (Tr. 69-70).

### D.    The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Roberts has not engaged in substantial gainful activity since June 1, 2013, the alleged onset date.  (Tr. 14).  Next, the ALJ found that Roberts has the severe impairments of pancreatitis/bile duct dysfunction, emphysema, lumbar and cervical degenerative disc disease with migraine, depression, anxiety, and substance abuse disorder.  (*Id.*).  At Step Three, the ALJ found that Roberts' impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.

---

[1]

 At the hearing, Roberts testified that she spends two to three hours a day in a recliner "just to relax – chill" after walking to alleviate her lower back pain.  (Tr. 42).  She stated that she is generally awake in the recliner and does not fall asleep in it.  (*Id.*).

(Tr. 15).

The ALJ then found that Roberts retains the residual functional capacity ("RFC") to perform light work with the following limitations:  she should never climb ladders/ropes/scaffolds but can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl; she should never work around unprotected heights, dangerous moving mechanical parts, and occupational vibration; she is limited to no more than occasional exposure to humidity, dust, fumes, pulmonary irritants, and extreme cold/heat; she is limited to simple, routine, and repetitive tasks not performed at a rate pace, as well as simple work-related decisions; and she can occasionally interact with supervisors and coworkers but cannot interact with the general public.  (Tr. 17).

At Step Four, the ALJ concluded that Roberts is unable to perform any past relevant work.  (Tr. 21).  At Step Five, the ALJ found that considering Roberts' age, education, work experience, and RFC, she can perform the following unskilled jobs that exist in significant numbers in the national economy:  machine tender, line attendant, and packager.  (Tr. 22-23).  As a result, the ALJ concluded that Roberts is not disabled under the Act.  (Tr. 23).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not

remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted);

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

**F.   Analysis**

In her summary judgment motion, Roberts argues that: (1) the Appeals Council erred by failing to incorporate "new and additional evidence" into the transcript and failing to remand the matter for further consideration in light of this evidence; (2) the ALJ erred in finding that her impairments did not meet or equal Listing 12.04; and (3) the ALJ's hypothetical question to the VE was flawed.[2]

>    *1.   The Appeals Council's Decision Does not Provide a Basis for Remand, and a Sentence Six Remand is Not Appropriate*

Roberts argues that the Appeals Council improperly handled the "new and additional evidence" she provided to it.[3]  (Doc. #18 at 19, 21).  Specifically, Roberts directs the Court's attention to (1) a February 22, 2016 discharge summary from physical therapy due to Roberts'

---

[2] In addition to the three arguments listed above, Roberts also argues that: (1) the ALJ's decision "is not supported by substantial evidence and is contrary to the great weight of evidence in the record"; and (2) the ALJ "failed to present coherent, cogent specific[]" reasons as to why she discounted Roberts' testimony regarding her "gastrointestinal, psychological and spinal impairments, when they are substantiated by the great weight of evidence presented."  (Doc. #18 at 21).  But the manner in which Roberts presents these arguments is insufficient to merit the Court's consideration of them.  With respect to the first argument, Roberts argues in general terms that she was, in fact, disabled during the period at issue and that the ALJ's decision was "erroneously decided."  (*Id.* at 23).  She states that she believes that the record "establish[es] in no uncertain terms, [her] inability to work at any level," and she argues that the Court should review the additional evidence discussed in her request for a sentence six remand.  (*Id.*).  Meanwhile, Roberts' argument about the ALJ's treatment of her testimony appears in a list of issues Roberts compiled for judicial review, but Roberts does not elaborate on this argument later on, in the body of the "Argument" section of her motion.  Thus, these arguments are deemed waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal quotations omitted)).

[3] Roberts attached a copy of this evidence to her motion for summary judgment.  (Doc. #18-1).

failure to schedule any further visits since January 8, 2016; (2) results from an X-ray of Roberts'
abdomen performed on March 4, 2016; (3) hospital records from when Roberts was admitted
with acute pancreatitis between March 4, 2016 through March 8, 2016; (4) results from a
magnetic resonance cholangiopancreatography performed on April 7, 2016; (5) records by April
Kastning, PA-C, from office visits on June 9, 2016 and August 8, 2016 primarily for treatment of
headaches; (6) records regarding a colonoscopy performed on Roberts on June 13, 2016; and (7)
a record by Anoop Prabhu, M.D., from a follow-up visit to the University of Michigan Advanced
Endoscopy Clinic on August 4, 2016.[4]   (Doc. #18-1).   The Appeals Council reviewed this
evidence but declined to "consider and exhibit" it.  (Tr. 2).  The Appeals Council explained that
it found that "this evidence does not show a reasonable probability that it would change the
outcome of the decision."  (*Id.*).

Roberts takes issue with the Appeals Council's "inconsistent statements in both
considering and not considering the proffered evidence and then failing to make it part of the
Transcript to allow the issue to be judicially reviewed."  (Doc. #18 at 25).  She argues that "the
Appeals Council's failure to include the documents in question in the Transcript effectively
prevents this Court's review of the documents."  (*Id.* at 27).  But Roberts herself acknowledges
that 42 U.S.C. 405(g) "does not address" such a situation, and she points to case law that she
admits provides little guidance on this particular issue.  (*Id.* at 24-25, 28).  Meanwhile, the
Commissioner cites to cases indicating that "[t]he Appeals Council's notice denying review of

---

[4] In her motion, Roberts simply identifies these documents as:  (1) "McLaren Central Michigan
Records (3/4/16~6/3/16)"; (2) "MidMichigan Physician's Group-Mt. Pleasant Family Practice
Records (3/4/16-8/19/16)"; and (3) "University of Michigan Advanced Endoscopy Clinic
Records (8/4/16)."  (Doc. #18 at 19).

an ALJ's decision is not reviewable by the district court."  (Doc. #20 at 13); *see Meeks v. Sec'y of Health & Human Servs.*, 996 F.2d 1215 (6th Cir. 1993) ("An Appeals Council order denying review is not, however, a reviewable order; such an order serves only to make the decision of the ALJ the final reviewable decision of the Secretary." (citing 20 C.F.R. § 404.955)); *Muszynski v. Comm'r of Soc. Sec.*, No. 10-CV-13590, 2011 WL 1899336, at *8 (E.D. Mich. Mar. 24, 2011), *report and recommendation adopted*, No. 10-13590, 2011 WL 1899290 (E.D. Mich. May 19, 2011) ("Plaintiff asks this Court to review the Appeals Council's decision to deny review and this Court is not authorized to do so, as it is the ALJ's Decision which became the final and reviewable decision of the Commissioner.").  Indeed, as explained above and in a previous decision by this court,

> [t]his Court's review is confined to the evidence presented to the ALJ to determine whether the ALJ's decision is supported by substantial evidence.  *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003).  Any evidence presented to the Appeals Council may be considered only for purposes of remand pursuant to the sixth sentence of 42 U.S.C. § 405(g).  *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  In addition, "the scope of the court's review is defined by statute, and does not encompass the Appeals Council's discretionary decision whether to grant review."  *Nash v. Comm'r of Soc. Sec.*, No. 1:08-cv-132, 2009 WL 1531835, at *5 (W.D. Mich. June 1, 2009) (citing *Matthews v. Apfel*, 239 F.3d 589, 594 (3rd Cir. 2001) ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review.")).

*Muszynski*, 2011 WL 1899336, at *8 (finding that the plaintiff's allegation of error by the Appeals Council "cannot support [the plaintiff's] motion for summary judgment").

Although not entirely clear,[5] it appears that Roberts is asking that, if relief cannot be granted to her based on the Appeals Council's alleged error, the case be remanded under sentence six for consideration of the additional evidence she provided to the Appeals Council. (Doc. #18 at 21).  The Court finds that a sentence six remand is not appropriate.

Remand to consider additional evidence is appropriate only when the evidence is new and material, and good cause is shown as to why it was not presented at the prior proceeding. *See* 42 U.S.C. § 405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984).  It is the plaintiff's burden to show that the new evidence meets these requirements.  *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009) (citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)).

Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).  Without going into detail about each record, Roberts argues that all of the medical records provided to the Appeals Council "were not complete or available to either party at the time of the hearing." (Docs. #18 at 24; #21 at 2).  Here, the documents at issue are dated February 22, 2016; March 4, 2016 through March 8, 2016; April 7, 2016; June 9, 2016; June 13, 2016; August 4, 2016; and August 8, 2016.  (Doc. #18-1).  Thus, the record from February 22, 2016 is not "new" evidence

---

[5] Where Roberts first introduces this argument regarding the Appeals Council's alleged error, she appears to make an "in the alternative" request for a sentence six remand.  (Doc. #18 at 21).  But she omits this request from the pertinent heading in the "Argument" section of her motion.  (*Id.* at 23-24).  Furthermore, later in her motion, she seems to characterize the situation as an "omission" of evidence from the record, whose "remedy . . . is correction of the record through a supplemental certified administrative record, not remand to the Commissioner under sentence six."  (*Id.* at 26) (citing *Blank v. Comm'r of Soc. Sec.*, No. 1:10-cv-987, 2013 WL 364017, at *4 (W.D. Mich. Jan. 30, 2013)).  The court in *Blank*, the case Roberts cites, indicates that "if documents were erroneously omitted from the certified administrative record, the procedure for correcting the problem was a written request to the Social Security Administration for a supplemental certified administrative record."  *Blank*, 2013 WL 364017, at *4.  As discussed herein, though, the "omission" of documents does not seem to be the issue in this case.

because it pre-dates the March 10, 2016 hearing,[6] whereas the records from April 7, 2016 onwards can be considered "new" evidence because they did not exist at the time of the March 10, 2016 hearing.

As mentioned above, Roberts argues in her motion that the records are "new" in general terms, simply stating that "they were not available as of the date of the hearing." (Doc. #18 at 24). In response, the Commissioner points to Roberts' hospitalization records from March 4, 2016 through March 8, 2016, which are from a few days before the hearing took place. (Doc. #20 at 9). The Commissioner argues that Roberts failed to show that this evidence is "new" because at the hearing she testified about the hospitalization and her attorney told the ALJ that he had not yet requested the records. (Id.). The Commissioner points out that "even though the ALJ did not issue her decision until May 3, 2016 – nearly seven weeks later – [Roberts] did not submit the hospitalization records to the ALJ, or show that they were unavailable to her during that period." (Id.). Indeed, the hearing transcript confirms that Roberts' attorney did mention the hospitalization at the hearing and stated that he had yet to request the pertinent records. (Tr. 32). Prior to discussing Roberts' hospitalization, the attorney informed the ALJ that the record was complete. (Id.). In her reply, Roberts contends that the Commissioner's argument as to these records "ignor[es] the fact that such records had not been completed nor available at the time of the hearing, and therefore were definitely 'new' in the sense that they were not available at the time of the hearing." (Doc. #21 at 2). Roberts' reply therefore sheds little light on when

---

[6] The Commissioner argues that the February 2016 records are not "new." (Doc. #20 at 9). In her reply, Roberts does not discuss the February 2016 records explicitly. Instead, she focuses on the March 2016 records and asserts that they were "definitely 'new.'" As to the remaining records, she simply states that "[t]he same is true with reference to the other records proffered to the Appeals Council, that they were not complete nor available to either party at the time of the hearing." (Doc. #21 at 2).

the records actually became available to her and why they were not available before the ALJ issued her decision.

Even if the records provided by Roberts to the Appeals Council are considered "new," Roberts has failed to demonstrate that these records are "material" and has failed to establish "good cause" for her failure to submit these records sooner.

Courts have held that additional evidence is material only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). Roberts argues that this evidence is "[o]bviously" material "under these circumstances" because there is a "reasonable probability that had an objective fact finder reviewed all of this evidence, she would not have found [Roberts'] testimony regarding her medically ascertained conditions less than fully credible, and would likely have awarded [her] benefits." (Doc. #18 at 26). Roberts believes this to be the case because her condition was "repeatedly assessed as severe" and, giving full credibility to the testimony of Roberts and her boyfriend, "debilitating." (*Id.*). Moreover, as to the records from June 2016 through August 2016, which came after the ALJ's decision, Roberts argues that their materiality "is in [their] cumulative effect, establishing the chronicity and severity of [Roberts'] multiple inter-related gastrointestinal conditions." (Doc. #21 at 2). Beyond this, Roberts does not get into greater detail about the information within each of the records or how the records would have altered the ALJ's decision. Regardless, Roberts' materiality argument lacks merit.

The February 22, 2016 physical therapy record is not material because it indicates that Roberts had no difficulty with activities of daily living, her rehabilitation potential was good with compliance, and she was discharged from outpatient physical therapy on this date because

she had not scheduled any visits since January 8, 2016.  (Doc. #18-1 at 48-49).  Moreover, Roberts' physical therapy record from January 8, 2016, which sheds greater light on her functional limitations, was included in the administrative record and was before the ALJ.  (Tr. 787-88, 795).  The ALJ also noted that Roberts "participated in five physical therapy visits in late 2014 and early 2015 and reported [a pain level of] 5/10 on her last visit."  (Tr. 18).  There is no reason to think that the February 22, 2016 discharge summary would alter the ALJ's findings.

As for the hospitalization records from March 4, 2016 through March 8, 2016, the Commissioner is right to point out that Roberts testified as to this hospitalization, and the ALJ considered this testimony in her decision.  (Doc. #20 at 11); (Tr. 19 ("[Roberts] testified that she was recently hospitalized for four days due to abdominal pain and was put on a non-liquid diet afterward."), 32, 46-48).  The Commissioner also appropriately notes that these hospital records "do not document any functional limitations, let alone limitations that exceed the ALJ's RFC finding."  (Docs. #18-1 at 17-18, 21; #20 at 11).  Importantly, Roberts does not argue or demonstrate otherwise.  Thus, these records are not material.

The remaining records, which post-date the hearing, are not material either.  The results from a magnetic resonance cholangiopancreatography performed on April 7, 2016 indicate that Roberts had "[m]ild biliary dilatation with no filling defects noted," was "[s]tatus post cholecystectomy," and had a left adrenal nodule that was "likely an adenoma."  (Doc. #18-1 at 13).  Records regarding a colonoscopy performed on June 13, 2016 indicate that Roberts had a hyperplastic polyp, no significant abnormality in her colonic mucosa, and no signs of ulcerative colitis.  (Id. at 11, 57).  Meanwhile, records from Roberts' visit to Nurse Kastning on June 9, 2016 and August 8, 2016 are not material because they mostly discuss Roberts' headaches after

the date of the ALJ's decision and give no indication of whether (and how) they affected her during the relevant period.[7]  (Tr. 37-46); *see Emmons v. Comm'r of Soc. Sec.*, No. 2:12-15235, 2014 WL 1304936, at *3 (E.D. Mich. Feb. 13, 2014) (denying remand where new evidence did not discuss claimant's condition between the alleged onset date and the date of the ALJ's decision); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (finding that newly-submitted evidence was not material where the evidence pertained to a time outside the period adjudicated by the ALJ).  Moreover, results from physical examinations on both of these dates indicate mostly normal findings, such as that Roberts was in no acute distress and had normal gait and station.  (Doc. #18-1 at 38, 42-43).  A subsequent physical examination conducted by Anoop Prabhu, M.D., on August 4, 2016, also had normal findings.  (*Id.* at 57).  Dr. Prabhu characterized Roberts' pancreatitis as a "mild disease at best" and suggested intermittent monitoring moving forward.  (*Id.*).  He said that "[i]f she has no further bouts of pancreatitis, then there is likely no additional intervention to perform."  (*Id.*).  Thus, contrary to Roberts' argument about the materiality of these later records, the records do not appear to document the "chronicity and severity" of her gastrointestinal conditions.  Ultimately, Roberts has not "adequately explain[ed] why or how the records submitted would have reasonably persuaded the ALJ to make a different decision for the period at issue."  *Richardson v. Comm'r of Soc. Sec.*, No. 11-12605, 2012 WL 4210619, at *5 (E.D. Mich. Aug. 27, 2012).  Accordingly, Roberts has not established that the new evidence is material to the ALJ's decision.

---

[7] The record from August 19, 2016 indicates that Roberts stated "that she has been having worsening headaches for the past few years, mostly with her neck pain worsening."  (Doc. #18-1 at 41).  While this statement relates back to the relevant period, it gives no sense of any functional limitations that resulted from Roberts' headaches.  Regardless, the ALJ considered Roberts' testimony that "she sometimes has one to two headaches per week," for which "Imitrex is somewhat helpful."  (Tr. 18).  The ALJ also considered Roberts' testimony that there are times where she does not have headaches, and the ALJ noted that she reported no problems with headaches in September 2013.  (*Id.*).

Nor did Roberts satisfy the "good cause" requirement for a sentence six remand.  "Good cause" requires the claimant to demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  As this court has recognized, "'[g]ood cause' is *not* established solely because the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a 'harder line' on the good cause test." *Richardson*, 2012 WL 4210619, at *4 (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)) (emphasis in original).  A claimant attempting to introduce new evidence "must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision." *Id.* (internal citations omitted).  Here, the only explanation Roberts offered for failing to obtain and submit these records any sooner is that they "w[ere] not in existence prior to the date of the hearing."  (Doc. #18 at 26).  *Richardson* makes clear that this is insufficient to satisfy the good cause standard.

For all of these reasons, Roberts has not shown a reasonable probability that the ALJ would have reached a different conclusion on the issue of disability for the relevant period if presented with the proffered new evidence, nor has Roberts established good cause for her failure to submit the new evidence sooner.  As such, she is not entitled to a sentence six remand.

### 2. The ALJ Did Not Err in Her Evaluation of Listing 12.04

Roberts disagrees with the ALJ's finding that her conditions fail to meet Listing 12.04 ("Affective Disorders").  (Doc. #18 at 29).  She argues that her depression "clear[ly]" meets Listing 12.04 – in particular, this listing's "paragraph A" and "paragraph B" criteria – "and therefore a finding of 'disabled' was not only warranted, but mandated by such a meeting/equaling."  (*Id.* at 32).  An impairment qualifies as an affective disorder under Listing 12.04 if it either meets the criteria in (1) paragraphs A and B; or (2) paragraph C.  20 C.F.R. § Pt.

404, Subpt. P, App. 1, Listing 12.04 (effective Aug. 12, 2015 to May 23, 2016).

Here, substantial evidence supports the ALJ's finding that Roberts' mental impairments did not meet Listing 12.04's paragraph B.  (Tr. 16).  To meet paragraph B, the mental impairment must result "in at least two of the following:  1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.04 (effective Aug. 12, 2015 to May 23, 2016).  The ALJ concluded that Roberts had mild restriction in his activities of daily living because "[t]he evidence shows that [Roberts] is able to care for her personal needs, drive, shop, prepare meals, clean, do laundry, and handle her finances."  (Tr. 16).  The ALJ explained that "[t]his level of function is consistent with mild limitations in activities of daily living and the [Disability Determination Services ('DDS')] findings [by State agency psychologist, Mark Garner, Ph.D.]."  (*Id.*).

The ALJ concluded that Roberts had moderate restriction in maintaining social functioning because "[t]he evidence shows that [Roberts] can occasionally interact with supervisors and coworkers, but cannot interact with the general public."  (*Id.*).  Again, she explained that "[t]his is consistent with moderate limitations in social functioning and the DDS findings."  (*Id.*).

The ALJ concluded that Roberts had moderate difficulties in maintaining concentration, persistence, or pace because "[t]he evidence shows that [Roberts] is limited to simple, routine and repetitive tasks, not performed at a rate pace, as well as simple work related decisions."  (*Id.*).  The ALJ again explained that "[t]his is consistent with moderate limitations in concentration, persistence or pace and the DDS findings."  (*Id.*).

Finally, the ALJ concluded that Roberts did not experience episodes of decompensation of extended duration because "[t]he medical evidence failed to establish any periods of hospitalization, exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning." (*Id.*). Thus, the ALJ concluded that Roberts' mental impairments did not meet paragraph B of Listing 12.04 because her "mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." (*Id.*).

Roberts takes issue with the ALJ's findings regarding (1) social functioning; (2) concentration persistence, or pace; and (3) episodes of decompensation of extended duration, because she believes that that the ALJ "offers scant evidence to support her conclusions as to [her] disabling depression." (Doc. #18 at 29). The Court disagrees. Later in her decision, the ALJ references portions of the record that support these Step Three findings regarding Listing 12.04. The ALJ's evaluation of this listing was not improper, and her findings are backed by substantial evidence.

As to social functioning, the ALJ noted that Roberts reported that she spent time with family and close friends and had no problems getting along with others. (Tr. 21). The ALJ considered Koons' Third Party Function Report where she indicated that she visited Roberts three to four times a week for several hours each time. (*Id.*). Indeed, this is an accurate reflection of statements provided by Roberts and Koons in their Function Reports. (Tr. 243, 247, 234-35). Roberts' Function Report also indicates that she has never been fired or laid off because of problems getting along with others and that she gets along with authority figures "good." (Tr. 236). Although Roberts wrote that she doesn't like being around big crowds because it gives her panic attacks, she indicated that she shops for groceries in the store once a

week.  (Tr. 233, 235).  At the hearing, Roberts testified that she lives in a house with her boyfriend.  (Tr. 35-36).

With respect to concentration, persistence, or pace, the ALJ noted that, in her Function Report, Roberts "alleged no difficulties remembering, understanding things, following instructions, and getting along with others."  (Tr. 20).  The ALJ did not overlook that Roberts reported some difficulties with concentrating and completing tasks; however, the ALJ concluded that "she repeatedly reported no problems with concentration."  (*Id.*).  A review of Roberts' Function Report confirms that Roberts stated that she does not need any special reminders with respect to personal care and taking medication (Tr. 232); she finishes what she starts (Tr. 235); and she can follow both written and spoken instructions.  (Tr. 235, 248).  Although Roberts marked boxes indicating she has problems with completing tasks and concentrating, she did not mark boxes indicating that she had problems with memory, understanding, and following instructions.  (Tr. 235).  She is able to drive, shop in stores, and handle money.  (Tr. 36, 233).  At the hearing, Roberts testified that she had no trouble reading, writing, counting and making change, understanding, talking, or communicating.   (Tr. 45).  This is consistent with the observations made by H. Parkhurst during Roberts' Field Office interview, where Roberts was found to demonstrate no difficulty with hearing, reading, understanding, coherency, concentrating, talking, and answering.  (Tr. 217).  In addition, as the ALJ highlights (Tr. 20-21), on numerous occasions Roberts was found to have normal orientation to person, place, and time and normal/appropriate mood and affect.  (Tr. 494, 497, 503, 507, 511, 519, 593-94, 643, 701, 708, 717, 734, 742, 749, 767).  The ALJ also accurately pointed out that more than once, Roberts denied having depression and/or depressive symptoms.  (Tr. 20, 700, 712, 722, 731, 739).

Regarding episodes of decompensation of extended duration, the ALJ considered that

Roberts "testified that she has never had inpatient treatments for psychiatric issues" and, in addition, that "[t]here is no evidence of in-patient psychiatric hospitalizations and most of her treatments have been conservative in nature and rendered by her family practitioner[]." (Tr. 20-21). This is an accurate reflection of the record. Roberts testified at the hearing that she has dealt with depression her whole life. (Tr. 65). She said she saw a counselor "years ago" but now limits her treatment to non-habit-forming medication. (*Id.*). The record indicates that Nurse Kastning assessed Roberts with anxiety (but not depression) and prescribed Roberts medication for it. (Tr. 496-98, 501, 503, 510-11, 514-16).

Roberts argues that the evidence regarding in-patient admission and treatment bears no relevance to the paragraph B factors at issue:  social functioning; concentration, persistence, or pace; and episodes of decompensation of extended duration. (Doc. #18 at 29-30). But the ALJ properly considered that Roberts had no in-patient psychiatric admission and had received conservative treatment for purposes of evaluating whether she had experienced any episodes of decompensation of extended duration. The regulations provide that

> [e]pisodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.04 (effective Aug. 12, 2015 to May 23, 2016). Thus, the evidence that the ALJ considered was appropriate in determining that Roberts did not

meet this aspect of paragraph B because it shows no exacerbation in Roberts' symptoms that required increased treatment or a change in her support system. Roberts argues that the ALJ's "conclusion that there is no evidence of record of repeated instances of decompensation . . . is clearly erroneous" because "there is clear and inarguable evidence of it" – namely, that Roberts worked for eighteen different employers from 1990 through 2012. (Doc. #18 at 32). But this twenty-two-year period falls outside the relevant time frame (because it pre-dates Roberts' June 1, 2013 alleged onset date), and even if this were not the case, the regulations do not provide that a claimant's job history is relevant to the issue of decompensation, and Roberts does not explain why (or cite any case law holding that) it should be considered for this purpose.[8]

In her motion, Roberts points to other evidence that she believes supports the severity of her mental impairments. (*Id.* at 31). She believes that evidence of her social functioning being "severely restricted due to her major depression" can be found in her testimony "that she hardly ever goes out, [and] that she is essentially a recluse from strangers, dealing only with her immediate family, boyfriend and one friend" mostly by phone. (*Id.*). Meanwhile, she argues that her limitations regarding concentration, persistence, and pace are evidenced by the fact that she "rarely leaves the home due to agoraphobia" and has "difficulties dealing with others, depression, [and] anxiety."[9] (*Id.*). But Roberts does not cite to where in the record this evidence

[8] In her reply, Roberts asserts that the Commissioner's argument "that this wholesale inability to maintain employment was irrelevant because it predated her onset date . . . is absurd, as such failures would logically have to have predated the onset of disability date." (Doc. #21 at 6). But this assertion does nothing to clarify why Roberts' earlier job history is pertinent to a paragraph B decompensation analysis.

[9] Roberts also lists these limitations as evidence that she is unable to perform "gainful employment" eight hours a day, five days a week, without being absent more than one or one and a half days per month. (Doc. #18 at 31). In addition, she relies on the opinion of consultative examining psychologist Stuart Quirk, Ph.D., that Roberts may need "additional training and time to acclimate to a new workplace setting" to argue that her ability to perform "gainful employment" is limited. (*Id.* at 30). But at Step Three, the evidence is reviewed not to determine whether an individual can perform gainful employment; rather, the evidence is

appears, even though the burden is on her to prove that her impairments meet or medically equal a particular listing.  *See Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 645 (6th Cir. 2006); *Gower v. Comm'r of Soc. Sec.*, No. 13-14511, 2015 WL 163830, at *26 (E.D. Mich. Jan. 13, 2015).

Roberts also criticizes the ALJ's reliance on Dr. Garner's opinion in conducting the paragraph B analysis for Listing 12.04.  (Doc. #18 at 32 n.4).  Roberts argues that the ALJ's decision "to bestow great weight upon Dr. Garner's conclusion is clearly erroneous" because it is "neither legally reasonable nor logical" to give "'great weight' to the opinion of someone who has never even laid eyes on [her], let alone actually conducted a psychological evaluation of her."  (*Id.*).  Moreover, Roberts finds the ALJ's reliance on Dr. Garner's opinion problematic because "every case that the ALJ sees is [one] where Dr. Garner or another of DDS's consultative examiners found the Plaintiff capable of working."  (*Id.*; Doc. #21 at 5).  Roberts' argument regarding this issue – in both her motion and her reply brief – appears unaccompanied by any reference to legal authority.  (*Id.*).  Meanwhile, the Commissioner cites to valid case law in support of her argument that the ALJ committed no error.  (Doc. #20 at 19).

"Social security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are highly qualified and are experts in Social Security disability evaluation."  *Rios v. Comm'r of Soc. Sec.*, 1:16-CV-171, 2016 WL 6310280, at *3 (W.D. Mich. Oct. 28, 2016) (internal quotations omitted); *Allen v. Berryhill*, No. 16-14154, 2017 2838467, at *3 (E.D. Mich. May 9, 2017) (citing Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2 (July 2, 1996)); 20 C.F.R. § 404.1527(e) (effective Aug. 24, 2012 to March 26, 2017).  An ALJ is "free to consider [a] consultant's opinion and determine what

---

reviewed to determine whether an individual's impairments meet or equal a particular listing, in this case, Listing 12.04.

weight, if any, it should be given." *Kilkolski v. Comm'r of Soc. Sec.*, No. 14-cv-14700, 2016 WL 6080217, at *9 (E.D. Mich. Jan. 27, 2016); *see also Cady v. Comm'r of Soc. Sec.*, No. 1:14-cv-57, 2015 WL 3767666, at *6 (W.D. Mich. June 17, 2015).

Roberts' argument regarding the ALJ's reliance on Dr. Garner's opinion lacks merit. The ALJ's analysis is not flawed and remand is not appropriate simply because Dr. Garner is a non-examining physician. *Ison v. Acting Comm'r of Soc. Sec.*, No. 2:16-cv-00464, 2017 WL 4124586, at *8-9 (S.D. Ohio Sept. 18, 2017) (finding that the ALJ did not err by relying on the state agency examiner's opinion in determining whether the claimant met or medically equaled certain listings); *Hall ex rel. A.H. v. Comm'r of Soc. Sec.*, No. 4:13-CV-637, 2014 WL 2547791, at *8 (N.D. Ohio June 5, 2014) ("The regulations recognize these [state agency] consultants as 'highly qualified' and 'experts in Social Security disability evaluation,' and thus, their medical opinions lend further support to the ALJ's ruling [that the plaintiff did not meet or medically equal any subsection of a listing]." (internal citation omitted)).  Notably, Roberts does not argue that the ALJ's reliance on Dr. Garner's opinion was improper because Dr. Garner's opinion is inconsistent with the record or with the opinion of her treating physician.  "Thus, in the absence of a contrary opinion from a treating physician, the Court is hard-pressed to find that the ALJ erred in relying on Dr. [Garner's] opinion in reaching the step three determination." *McGuffin-Paris v. Comm'r of Soc. Sec.*, No. CV 17-12480, 2018 WL 2994663, at *3 (E.D. Mich. Apr. 27, 2018), *report and recommendation adopted*, No. 17-CV-12480, 2018 WL 2981833 (E.D. Mich. June 14, 2018) (internal citation omitted).

For the reasons explained above, Roberts has failed to show that her impairments meet or equal Listing 12.04 and that the ALJ erred in her evaluation of this listing.  Thus, remand is not appropriate as to this issue.

> 3.    *Roberts Has Not Established that the ALJ's Hypothetical Question to the VE was Flawed*

Roberts argues that after she established that she was incapable of performing her past relevant work at Step Four, "[i]t is abundantly clear that the Commissioner failed to meet [her] burden of proof" at Step Five to show that there are a significant number of jobs in the economy that Roberts can perform.  (Doc. #18 at 32-33).  Although Roberts frames her argument in this way, she later characterizes the issue as "the ALJ's fallacious hypothetical and not . . . the [VE's] response to that hypothetical."  (Doc. #21 at 6).  Regardless, this argument lacks merit.

"As an initial matter, . . . the burden of proof lies with the claimant at steps one through four of the [sequential evaluation], culminating with a claimant's proof that she cannot perform her past relevant work."  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).  If the ALJ determines that a claimant's impairments prevent her from doing her past work, the Commissioner then has the burden at Step Five of "proving that there is work available in the economy that the claimant can perform."  *Vandenboss v. Comm'r of Soc. Sec.*, No. 14-12283-DT, 2015 WL 3823558, at *3 (E.D. Mich. June 18, 2015) (quoting *Her*, 203 F.3d at 389-90); *Preslar*, 14 F.3d at 1110.  "To meet this burden, the Commissioner must make a finding 'supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs.'"  *Vandenboss*, 2015 WL 3823558, at *3 (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)).  "This 'substantial evidence' may be in the form of [VE] testimony in response to a hypothetical question, 'but only 'if the question accurately portrays [the claimant's] individual . . . impairments.''"  *Id.* (internal citations omitted).  At the same time, "'the ALJ is only required to incorporate into the hypothetical questions those limitations that have [properly] been accepted as credible,' . . . and 'is not obligated to include unsubstantiated complaints and restrictions in his hypothetical

questions.'"  *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 533 (6th Cir. 2014) (quoting

*McIlroy v. Comm'r of Soc. Sec.*, 42 F. App'x 738, 739 (6th Cir. 2002); *Brewer v. Soc. Sec.*

*Admin.*, 39 F. App'x 252, 254 (6th Cir. 2002)).

> As the Commissioner points out, the Sixth Circuit has made clear that

>> the burden of proof shifts at step five in order to prove the availability of jobs in the national economy, and should not be read to expand that requirement.  To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner.  For these reasons, we reject the argument that if [the RFC] is not proven by the claimant before step five, the burden of proving it shifts to the Commissioner.

*Her*, 203 F.3d at 392.

Here, Roberts argues that the ALJ erred in formulating her hypothetical question (that

later formed the basis of the RFC) to the VE because it is "contrary to the evidence of record,"

especially Roberts' testimony and Koons' Function Report, and because it is based on the

opinion of Dr. Garner, "who has never laid eyes on [Roberts]."[10]  (Docs. #18 at 33-35; #21 at 6).

Thus, this argument is a veiled attack on the ALJ's underlying RFC finding because, in reality, it

is not about the ALJ's Step Five finding regarding the availability of jobs in the national

economy.  *See Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich.

Nov. 4, 2013).

Roberts argues that one of the ways in which the ALJ's hypothetical question is flawed is

that given the nature of her degenerative disc disease, it is "exceedingly unlikely" that she could

perform the amount of standing, walking, and lifting required for light work and it is

"unreasonable" to think that "she could do this 8 hours a day, 5 days a week, week in and week

out without missing significant time from work."  (Doc. #18 at 34).  But Roberts does not cite to

---

[10] The Court has already determined that it was not improper for the ALJ to rely on Dr. Garner's opinion simply because he is a non-examining physician. *See supra* at 22-23.

any evidence that indicates that her degenerative disc disease caused such severe functional limitations that her ability to stand, walk, and lift was more limited than determined by the ALJ, and "the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *Dukes v. Comm'r of Soc. Sec.*, No. 1:10-CV-436, 2011 WL 4374557, at *6 (W.D. Mich. Sept. 19, 2011) (quoting *McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000)).  Moreover, at the hearing, Roberts indicated that she had no difficulty with walking and that she goes for long walks.  (Tr. 42-43).  Even though she did state that she had limitations with standing and sitting, she gave no indication of the extent of these limitations – for instance, the time frame in which she could do these activities.  (Tr. 43).  She did say, however, that she could drive in a car for forty-five minutes to an hour and that she had recently flown from Michigan to California.  (Tr. 44-45).  The ALJ properly considered this testimony regarding her physical limitations in formulating the RFC, among other statements made by Roberts regarding this topic.  (Tr. 19-20).

Roberts also faults the ALJ for "utterly failing to address" her pancreatitis as a chronic condition, "especially the diarrhea which would vastly decrease [her] remaining on task at work, and which would prove debilitating in certain work environments" depending on her ability to access to the bathroom.  (Doc. #18 at 34-35).  Again, Roberts cites to no testimony or medical evidence that demonstrates that her chronic pancreatitis imposed this particular limitation that she believes the ALJ should have taken into account.  Moreover, at the hearing, Roberts did not mention that her chronic pancreatitis gives her diarrhea – much less that it would affect her ability to work and to remain on task at a job.  (Tr. 48-49).  In fact, as the Commissioner highlights, Roberts stated that her chronic pancreatitis "usually doesn't bother [her]" and that she

just has to try to watch what she eats.  (Tr. 48).  Furthermore, Roberts' medical records show that she denied having diarrhea on multiple occasions.  (Tr. 340, 398, 405, 492, 510, 517, 594). The ALJ properly considered Roberts' testimony and the medical evidence surrounding her chronic (and acute) pancreatitis.  (Tr. 18-19).  Roberts – who bears the burden of proving her RFC – has not shown that the ALJ's failure to consider the functional limitations resulting from diarrhea caused by her chronic pancreatitis is error meriting remand.

In sum, the Court agrees with the Commissioner that Roberts' "arguments about the ALJ's RFC finding are entirely speculative and/or conclusory and not based on any specific evidence relating to her functional abilities."  (Doc. #20 at 23).  The Court therefore finds this argument regarding the ALJ's RFC unavailing.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [20] be GRANTED, that Roberts' Motion for Summary Judgment [18] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: July 9, 2018                                    s/David R. Grand_____
Ann Arbor, Michigan                             DAVID R. GRAND
                                                             United States Magistrate Judge


## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

27

72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 9, 2018.

s/Eddrey O. Butts_____
EDDREY O. BUTTS
Case Manager
